BARBER–GREENE COMPANY, a
Delaware Corporation, Plaintiff,

v.

WALCO NATIONAL CORPORATION, a
New York Corporation, and Frederick
W. Richmond, Defendants.

Civ. A. No. 77–52.

United States District Court,
District of Delaware.

March 14, 1977.

Lewis S. Black, Jr., and Craig B. Smith, of Morris, Nichols, Arsht & Tunnell, Wil-

mington, Del., for plaintiff; Wachtel, Lipton, Rosen & Katz, New York City, of counsel.

Aubrey B. Lank, of Theisen, Lank & Mulford, Wilmington, Del., for defendants; William J. Butler, Stanley Geller, and Gerald M. Kleinbaum, of Butler, Jablow & Geller, New York City, of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff, Barber-Greene Company, a Delaware corporation, filed a complaint on January 31, 1977 in the Court of Chancery of the State of Delaware against Walco National Corporation, a New York corporation, and Frederick Richmond. Plaintiff alleges that defendants have acquired more than 13.5% of the total outstanding common stock of Barber-Greene during the period from June 29, 1976 through January 28, 1977. Complaint ¶ 7. In response to a request made pursuant to 8 Del.C. § 220, Barber-Greene provided defendant Walco with access to a current shareholder list. Complaint ¶ 9. Plaintiff contends that defendants have conspired to invite tenders of Barber-Greene common stock and to engage in practices constituting solicitation of such securities from more than 30 shareholders. The complaint charges that the defendants thereby violated 8 Del.C. § 203 in that they executed a tender offer while neglecting to comply with the procedures as set forth in that provision. Plaintiff seeks an order requiring Walco to divest itself of all shares of Barber-Greene common stock, a declaration that defendants violated § 203 and that Barber-Greene is entitled to refuse to transfer on its books any stock purchased

by defendants, and damages of $7,500,000.00.

A summons issued for Walco was returned "*non sunt inventi*". The plaintiff moved for substituted service pursuant to 10 Del.C. § 365 and sequestration pursuant to 10 Del.C. § 366. The State Court issued the required order which permitted service of notice on Walco by certified mail and publication and provided for compliance with the sequestration procedure, including the appointment of a sequestrator, the provision of notice to defendants, and the filing of the required bonds. Shortly thereafter, Chancellor Marvel granted plaintiff's motion for expedited discovery. That motion consisted of a request for production of documents on February 22, 1977 and a series of depositions of the key personnel of Walco beginning on February 23, 1977 and continuing through March 2, 1977.

On February 15, 1977, defendant Walco [1] filed a Petition for Removal pursuant to 28 U.S.C. § 1446, and complied with the procedure for removal set forth in that section. Simultaneously, defendant filed a Motion to Dismiss on the ground that the Court lacks jurisdiction over defendant. Defendant also sought a stay of expedited discovery pending resolution of that issue.[2] The parties submitted briefs and the Court heard oral argument with respect to this motion. At the conclusion of oral argument, the Court ordered discovery stayed pending resolution of the jurisdictional issue, but ordered defendant to be ready to comply with the production request on Wednesday, February 23, 1977.[3]

Defendant, relying to a large extent on *U. S. Industries, Inc. v. Gregg*, 540 F.2d 142 (3rd Cir. 1976), argues first that the Dela-

---

1. The record before this Court does not indicate that any service, substituted service, or sequestration was sought or obtained against defendant Richmond. Thus, he does not appear to be a party to this action.

2. Defendant moved pursuant to Rule 6(d) Fed. R.Civ.P. to have the time period between service of notice and hearing of the motion shortened from five days to three days due to the pending expedited discovery. That motion was

granted by order of the Honorable Murray M. Schwartz dated February 15, 1977.

3. After the argument, counsel for plaintiff filed a letter on February 22, 1977 containing further argument in support of their contentions. In the interest of fairness, the Court wrote counsel for defendant to provide them with an opportunity to respond. A response, dated February 25, 1977, was received on March 1, 1977. Consideration of these additional papers delayed somewhat the Court's decision.

ware substituted service and sequestration provisions are unconstitutional as applied in this case because there are inadequate minimum contacts with the state to sustain jurisdiction under the due process clause. Defendant further contends that the absence of any pre-seizure adversary hearing or other procedural safeguards is also violative of the due process clause. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Company*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and *Sniadach v. Family Finance Corporation*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

Plaintiff distinguishes *U. S. Industries, Inc. v. Gregg*, on two grounds. The first is that there are factors in this case which connect the case more closely to Delaware. These factors include plaintiff's bringing the cause of action under a Delaware statute, 8 Del.C. § 203, which provides for special remedies as well as expedited handling and the fact that the suit is a dispute between a Delaware corporation and some of its stockholders over the relationship between the corporation and some stockholders *inter sese*. The second distinction urged on the Court is that *U. S. Industries, Inc. v. Gregg* did not touch on the constitutionality of substituted service of process under § 365. In response to defendant's second due process argument, plaintiff relies strongly on two cases: *Greyhound Corp. v. Heitner*, 361 A.2d 225 (Del.1976), appeal filed sub nom., *Shaffer v. Heitner*, —— U.S. ——, 97 S.Ct. 52, 50 L.Ed.2d 72 (1976), in which the Delaware Supreme Court upheld the constitutionality of the sequestration and substituted service provisions, and the lower court opinion in *U. S. Industries, Inc. v. Gregg* in which Judge Stapleton rejected arguments similar to those asserted here, 348 F.Supp. 1004 (D.Del.1972).

Analysis of defendant's constitutional arguments in this case must begin with an attempt to ascertain the scope of the Third Circuit's holding in *U. S. Industries, Inc. v. Gregg*. The complaint in that case contained eight counts stemming from the plaintiff's purchase of defendant's corporation in exchange for a number of shares of its stock. Jurisdiction was sought exclusively on sequestration under 10 Del.C. § 366, and defendant's stock was seized. Defendant refused to make a general appearance and subject himself to personal liability, and consequently suffered a default judgment. After rejecting defendant's nonconstitutional argument that his interest in the seized stock was not subject to sequestration, 540 F.2d at 145–47, the Court began its analysis of the constitutional issues, which discussion is of interest here. The Court resolved the problem into two questions:

(a) Whether the constitutional strictures of International Shoe [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] and its progeny apply to jurisdiction denominated quasi in rem; and

(b) If they do, whether the statutory situs of 8 Del.C. § 169, alone, is a sufficient minimum contact to support the jurisdiction here exercised. 540 F.2d at 147–48.

With respect to the first question, the Court reviewed the reasoning of *Greyhound Corp. v. Heitner, supra,* and Judge Stapleton's opinion in *U. S. Industries, Inc. v. Gregg, supra,* both of which concluded that the minimum contacts doctrine did not apply to quasi in rem jurisdiction. The Third Circuit disagreed:

We can only understand *Mullane* [*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)] and *Hanson* [*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)] as establishing a constitutional limit to state court jurisdiction wholly independent of the label—*in rem, quasi in rem,* or *in personam*—that may be affixed to that jurisdiction. And whether it be called affiliating circumstances or minimum contacts, we must assume that ultimately the test of *International Shoe* [*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90

L.Ed. 95 (1945)] is determinative: that there be sufficient connection with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158.

540 F.2d at 154.

This holding is certainly of relevance to the instant case, and the Court is of the view that it disposes of plaintiff's contention that the holding of *U. S. Industries, Inc. v. Gregg* does not apply to substituted service under 10 Del.C. § 365. The Third Circuit holding that the characterization of the type of jurisdiction is irrelevant in analyzing whether such jurisdiction is constitutionally supportable, compels this Court to perform the exact same analysis under both sections to determine whether or not there are adequate minimum contacts to support jurisdiction.

In *U. S. Industries, Inc. v. Gregg*, the court set forth the following description of the relationship of the parties and the cause of action to Delaware, the forum state:

> We do not exaggerate in saying that § 169 is the single affiliation with Delaware in this case. The cause of action did not arise in Delaware. The defendant is not a citizen or resident of Delaware; he conducts no business in the state and owns no property physically located there. His sole contact is his interest in shares of USI represented by certificates located in Florida. The plaintiffs' connections with Delaware—insofar as that may be relevant—are similarly sparse. Diversacon has no connection whatsoever; it is a Florida corporation having its principal place of business in Florida. USI is incorporated in Delaware but has its principal place of business in New York; it owns no property and maintains no business establishments in Delaware other than a registered agent's office as required by statute. (footnotes deleted).

540 F.2d at 155.

Based on these facts, the court concluded that the attempted exercise of jurisdiction there did not satisfy constitutional standards:

> Indeed, it is difficult to imagine how litigation implicating a Delaware corporation could have fewer or less meaningful contacts with the state. The brute fact is that USI's Delaware incorporation is the only genuine contact this litigation has with Delaware. It is our view that, under these circumstances, the fictional § 169 situs of stock in Delaware does not pass constitutional muster as a predicate for jurisdiction in an action admittedly seeking to obtain personal liability of a nonresident in connection with transactions unrelated to the forum.

540 F.2d at 155.

In many respects, the description in *U. S. Industries, Inc. v. Gregg*, of the contacts with Delaware is equally applicable to the case at bar. Plaintiff, Barber-Greene, is a Delaware corporation and the fictional situs of its stock under 8 Del.C. § 169 is Delaware. Its office and principal place of business is in Illinois. Defendant, Walco, is a New York corporation with its principal office and place of business in New York. Its sole contact with the State of Delaware is its ownership of stock in Barber-Greene, with its fictional situs in Delaware. The purchases of that stock and the method by which these purchases were consummated, which is at issue in the litigation, all took place outside of the State. The physical certificates of stock themselves are also located outside of Delaware.

■ With respect to these similarities, *U. S. Industries, Inc. v. Gregg* controls and requires this Court to conclude that the above described contacts alone are inadequate to satisfy constitutional standards.

Yet, there is one aspect of this case which plaintiff argues distinguishes it from *U. S. Industries, Inc. v. Gregg*. It is that the litigation here involves the relationship between a Delaware corporation and its shareholders *inter sese* whereas the litigation in *U. S. Industries, Inc. v. Gregg* centered on a contract dispute which, although between a Delaware corporation and a shareholder, was not based on their status as such. The gist of this distinction is that Delaware has a greater interest and hence

more significant contacts with a dispute over the procedures which must be followed in acquiring shares of Delaware corporations than it does in resolving a dispute over a contract entered into outside of the state by a Delaware corporation. Thus, the state may provide a forum for the litigation of such disputes without offending any notions of fair play. Some support for this distinction can be found in 8 Del.C. § 203 itself, which sets forth the required procedure and the conditions under which compliance is necessary. That provision requires, *inter alia*, the delivery by a tender offeror of a statement containing certain information to the target corporation either "at its registered office in this State or at its principal place of business". In this case, compliance with the statute, if such compliance is necessary, could only occur in Delaware or Illinois. The argument, then, is that there are adequate minimal contacts with Delaware notwithstanding that the events which may trigger such compliance occurred elsewhere.

Although the Court agrees that there is a more significant connection between the case at bar and Delaware than there was in *U. S. Industries, Inc. v. Gregg*, the Court cannot agree that there are adequate contacts to support jurisdiction. It may be true that Delaware has a particular and legitimate interest in the procedures followed in connection with the purchase of securities of corporations incorporated in Delaware. Yet neither the interest in providing a forum for the litigation of those issues nor the enactment of laws governing such transactions provides adequate minimum contacts with the state for jurisdictional purposes in this case. That plaintiff is seeking relief under 8 Del.C. § 203, a provision of the General Corporation Law of Delaware, is not a factor to be considered in ascertaining whether or not there are adequate minimum contacts. It may be relevant for choice of law purposes, "[b]ut questions of constitutional jurisdiction . . . are wholly different from choice of law issues." *U. S. Industries, Inc. v. Gregg, supra* at 156 n.11. *See also, Steel v. G. D. Searle & Co.*, 483 F.2d 339, 348 n. 25

(5th Cir. 1973). If Delaware's interest is indeed of major significance in the case then its interest will be adequately protected by the courts of its sister states, when they apply Delaware law and look to Delaware cases to interpret that law.

It is arguable that Delaware's legitimate interest in providing a forum in which resident plaintiffs may litigate disputes arising under 8 Del.C. § 203 makes the plaintiff's contacts with the state relevant for the purposes of minimum contacts. This argument is based on the similarities between this case and the New York procedure sanctioned by the New York Court of Appeals in *Seider v. Roth*, 17 N.Y.2d 111, 269 N.Y. S.2d 99, 216 N.E.2d 312 (1966). *See, Jonnet v. Dollar Savings Bank of the City of New York*, 530 F.2d 1123, 1139–42 (3rd Cir. 1976) (Gibbons J., concurring). That procedure, allowing attachment of liability insurance policies of insurance companies doing business in New York as a basis for jurisdiction in New York, was upheld in a case brought by a New York resident, *Minichiello v. Rosenberg*, 410 F.2d 106 (2nd Cir. 1968), *aff'd* on rehearing en banc, 410 F.2d 117, *cert. denied*, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed.2d 94 (1969). Shortly thereafter in *Farrell v. Piedmont Aviation, Inc.*, 411 F.2d 812 (2nd Cir. 1969), that court affirmed the dismissal of a complaint on the ground that the *Seider v. Roth* procedure was not available to a non-resident, noting serious doubt about whether use of such a procedure by a non-resident would be constitutional. Thus, it would seem from these cases that the contacts of the plaintiff with the forum state, i. e., residence, are relevant for jurisdictional purposes. However, Judge Gibbons, in his concurrence in *Jonnet v. Dollar Savings Bank of the City of New York, supra* at 1141, disagreed:

Simply stated, plaintiff contacts cannot cure a jurisdictional defect that derives from a lack of defendant contacts with the forum.

In *U. S. Industries, Inc. v. Gregg*, this conflict was noted, but the Court declined to reach the issue on the ground that "here the plaintiffs' contacts with the forum are

insufficient even assuming their relevance." 540 F.2d at 155 n. 9. The insufficiency stemmed from the court's view that notwithstanding that one of the plaintiffs, U. S. Industries, Inc., was a Delaware corporation, the plaintiffs could not "with reason be characterized as residents of Delaware", 540 F.2d at 155, presumably for the very limited purpose of considering their contacts with the forum as plaintiffs. In support of this position, the Court relied upon the holding in *Farrell v. Piedmont Aviation, Inc., supra* at 817, that the appointment of a New York resident as an administrator of a non-resident decedent's estate did not supply the necessary meaningful contact. Thus, the Third Circuit concluded that "the plaintiffs' contacts with the forum here are more formal than meaningful, at least in constitutional terms". *U. S. Industries, Inc. v. Gregg, supra* at 155.

At a minimum, these cases stand for the proposition that a prerequisite to the consideration of plaintiff's contacts with the forum in evaluating whether or not there are adequate minimum contacts to support jurisdiction, is that the contacts must be meaningful rather than formal and legalistic. Consistent with this understanding is the distinguishing of *Baker v. Gotz*, 492 F.2d 1238 (3rd Cir. 1974) (in banc), *aff'd* by an equally divided court, 336 F.Supp. 197 (D.Del.1971), *cert. denied*, 417 U.S. 955, 94 S.Ct. 3084, 41 L.Ed.2d 674 (1974), in *U. S. Industries, Inc. v. Gregg, supra* at 155 n. 10, on the ground that the plaintiff corporation there did business and had substantial assets in Delaware. Applying this rule to the instant case, it is clear that the plaintiff's contact with Delaware, consisting of its having been incorporated here, is indistinguishable from the contact deemed inadequate in *U. S. Industries, Inc. v. Gregg.* Delaware's interest in providing a forum for adjudicating disputes over the acquisition of shares of stock of Delaware corporations may be adequate to satisfy due process standards in some situations, but it is insufficient to sustain jurisdiction where the only tie to Delaware is that the plaintiff corporation was incorporated here.

Finally, there is the issue of the significance for jurisdictional purposes of the 8 Del.C. § 203 requirement which, if triggered, would require defendant to deliver to plaintiff a statement containing certain information either at its registered office in Delaware or at its principal place of business in Illinois. It could be argued that defendant's failure to file the required statement in Delaware provides an additional contact with the State for the purpose of assuming jurisdiction. The due process limitations on the exercise of jurisdiction are rooted in notions of fairness and substantial justice. *U. S. Industries, Inc. v. Gregg, supra* at 156, and *Jonnet v. Dollar Savings Bank of the City of New York, supra* at 1140–1141 (Gibbons, J. concurring). This Court is unable to say that the addition of that one factor changes the situation to any significant extent.

The statement, if tendered at the corporation's registered office in Delaware, would be forwarded to its principal place of business and office in Illinois. The delivery in Delaware would not be for the purpose of informing anyone physically present in the State of the contents of the statement, but rather for forwarding the statement to Illinois. Under these circumstances, Delaware is only a conduit for delivery to Illinois. This transitory contact with the State is not the type of meaningful contact necessary for jurisdiction. To exalt a minor factor such as that does not comport with this Court's notions of fairness and justice.

For these reasons, the Court concludes that it is without jurisdiction to entertain this action[4] and, therefore, defendant's Motion to Dismiss is granted.

---

**4.** Having ruled in defendant's favor on the ground that there are inadequate contacts with the State to sustain jurisdiction, it is unnecessary to address defendant's other due process arguments.