**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2343, 20-2344
_____

CPR MANAGEMENT, S.A.,

v.

DEVON PARK BIOVENTURES, L.P.;
DEVON PARK ASSOCIATES, L.P.,
Appellants in 20-2344

Deutsche Bank A.G.,
Appellant in 2343
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-01973)
District Judge:  Hon. Cynthia M. Rufe
_____

Argued October 14, 2021
_____

Before:  SHWARTZ, NYGAARD, and FISHER, Circuit
Judges.

(Filed: November 22, 2021)

K. Tyler O'Connell
Morris James
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801

Michael E. Gehring [ARGUED]
Stephen G. Harvey
Steve Harvey Law
1880 John F. Kennedy Boulevard
Suite 1715
Philadelphia, PA 19103

Counsel for Plaintiff-Appellee

James M. Yoch, Jr.
Young Conaway Stargatt & Taylor
1000 North King Street
Rodney Square
Wilmington, DE 19801

Quincy M. Crawford, III [ARGUED]
Kevin C. Maclay
Nathaniel R. Miller
Todd E. Phillips
Caplin & Drysdale
One Thomas Circle, N.W.
Suite 1100
Washington, DC 20005

Counsel for Defendants-Appellees

Forrest R. Hansen
Robert M. Palumbos [ARGUED]
Duane Morris
30 South 17th Street
Philadelphia, PA 19103

David G. Januszewski
Cahill Gordon & Reindel
32 Old Slip
New York, NY 10005

Counsel for Third Party-Appellant

_____

OPINION

_____


SHWARTZ, Circuit Judge.

CPR Management, S.A. ("CPR") and Deutsche Bank A.G. ("Deutsche Bank") both claim entitlement to the proceeds emanating from a $50 million partnership interest (the "Proceeds") in Devon Park Bioventures, L.P. (the "Devon Park Interest"). An arbitrator directed Devon Park Bioventures, L.P. and its general partner, Devon Park Associates, L.P. (collectively, "Devon Park"), to distribute the Proceeds to CPR. Pursuant to the Federal Arbitration Act ("FAA"), CPR seeks to confirm the award, and Devon Park and Deutsche

3

Bank seek to vacate it. In addition, Devon Park, who has no claim to the Proceeds, seeks to interplead Deutsche Bank for a determination as to who is entitled to the Proceeds. Because the District Court properly (1) struck Devon Park's interpleader claim, (2) confirmed the arbitration award, and (3) awarded prejudgment interest, we will affirm.

I

A

Sebastian Holdings, Inc. ("SHI"), owned by Alexander Vik, borrowed funds from Deutsche Bank. **App. 740 ¶ 42; App. 741 ¶¶ 46-47; App. 737-38 ¶¶ 20-23.** SHI entered a limited partnership agreement with Devon Park (the "LP Agreement"), **App. 157,** and invested $25 million to acquire the Devon Park Interest**, App. 132 ¶ 16**.

Deutsche Bank issued margin calls in connection with its loan to SHI, but SHI claimed that it lacked funds to satisfy the calls. **App. 737 ¶ 21.** Deutsche Bank then sued SHI in the Commercial Court, Queen's Bench Division of the High Court of Justice in England and Wales for repayment of the loan and received a $235,646,345 judgment, which SHI has not satisfied. **App. 737 ¶¶ 17, 22; App. 738 ¶ 28; App. 742 ¶ 61(a)**.

SHI, however, twice transferred the Devon Park Interest. First, it allegedly sold the Devon Park Interest to VBI Corporation ("VBI"), a company allegedly controlled by Vik's father ("Vik, Sr."). **App. 737-38 ¶ 23; App. 137 ¶ 43.** SHI later allegedly assigned (via an Assignment Agreement) the Devon Park Interest to Universal Logistic Matters, S.A.

4

("ULM"), which later changed its name to CPR (another company allegedly related to Vik, Sr.).[1] **App. 762-63 ¶ 132; App. 133 ¶ 17; App. 133 ¶ 20.** SHI paid Devon Park millions of dollars for transferring the Devon Park Interest to ULM. **App. 765 ¶¶ 148-50.**

Devon Park eventually made fund distributions to the limited partners, but it had difficulties transmitting the Proceeds to CPR**, App. 134 ¶¶ 22-25; App. 135-36 ¶¶ 32-41; App. 766, ¶ 155**, so it withheld most of them. **App. 136 ¶ 41; App. 134 ¶ 24.**

B

CPR believed that the failure to distribute the Proceeds violated the LP Agreement, so it initiated an arbitration to compel Devon Park to turn over the Proceeds. **App. 769 ¶ 177.** Deutsche Bank asked to intervene in the arbitration, but the arbitrator denied the request. **App. 770 ¶ 178.** Devon Park then answered CPR's arbitration demand and raised two counterclaims, one of which sought a declaration whether the Assignment Agreement is a valid, binding, and enforceable contract. **App. 527.**

While the arbitration was pending, Deutsche Bank sued CPR, SHI, and Devon Park in Delaware Chancery Court (the "Delaware Action"), and CPR and SHI in New York state court (the "New York Action"), alleging a conspiracy to commit fraud and seeking to unwind SHI's allegedly fraudulent transfer of the Devon Park Interest to CPR. **App. 770-71 ¶¶**

---

[1] The parties stipulated that CPR is the entity formerly known as ULM, **App. 600,** mooting the second counterclaim.

**179-89.** Devon Park moved to stay the arbitration pending resolution of these state actions. **App. 274-81.** The arbitrator denied Devon Park's motion. **App. 139 ¶ 60.** In response, Devon Park informed the arbitrator that it would no longer participate in the arbitration. **App. 139 ¶ 62; App. 628-31; App. 140 ¶ 69.** The arbitrator thereafter held the scheduled final hearing and awarded CPR the Proceeds, plus prejudgment interest compounded quarterly, **Supp. App. 209,** but stayed Devon Park's obligation to pay CPR if doing so conflicted with any orders in the Delaware Action**, App. 140 ¶¶ 66-67; App. 536.**[2]

C

CPR petitioned the Pennsylvania Court of Common Pleas to confirm the arbitration award. **App. 141 ¶ 75.** Devon Park removed CPR's petition to the United States District Court for the Eastern District of Pennsylvania, **App. 46,** answered the petition, and attempted to interplead Deutsche Bank pursuant to Federal Rule of Civil Procedure 22. **App. 46-49; App. 142 ¶¶ 81-84.** Deutsche Bank answered the interpleader complaint and brought its own claims, seeking to set aside the purported transfer of the Devon Park Interest from SHI to CPR, to declare SHI and CPR alter egos, and to find Devon Park, CPR, and SHI liable for fraud and conspiracy. **App. 775-81 ¶¶ 208-72.**

---

[2] Before the final arbitration hearing, the Delaware Chancery Court entered a temporary restraining order prohibiting Devon Park from distributing the Proceeds to CPR. **App. 771 ¶ 185.**

The District Court struck the interpleader complaint and dismissed all third parties and claims, reasoning that (1) a motion to confirm an arbitration award is a motion, not a pleading; and (2) a pleading is a prerequisite to Rule 22 interpleader; so (3) Devon Park's interpleader action was procedurally improper. **App. 1-4.** The District Court then granted CPR's petition to confirm the arbitration award because the arbitrator had a basis to (1) refuse postponing the final hearing under 9 U.S.C. § 10(a)(3), as the parties had months to develop their case and had already engaged in substantial discovery; (2) dismiss Devon Park's counterclaim seeking a declaratory judgment concerning the Assignment Agreement's validity under 9 U.S.C. § 10(a)(4), as the arbitrator expressly allowed Devon Park to pursue discovery but Devon Park chose to quit the arbitration and thus failed to present its evidence concerning the counterclaim; and (3) award prejudgment interest, compounded quarterly. CPR Mgmt., S.A. v. Devon Park Bioventures, L.P., 463 F. Supp. 3d 525, 532-39 (E.D. Pa. 2020).

Devon Park and Deutsche Bank appeal.

II

A[3]

We have jurisdiction over Devon Park's appeal of the interpleader and confirmation orders pursuant to 28 U.S.C.

---

[3] The District Court had jurisdiction over the petition to confirm the arbitration award pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203.

7

§ 1291 and 9 U.S.C. § 16(a). We also have jurisdiction over Deutsche Bank's appeal of the interpleader order.

Generally, we have jurisdiction over only "final decisions of the district courts of the United States[.]" 28 U.S.C. § 1291. "A final order is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 311 n.3 (3d Cir. 2001) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). The order striking Devon Park's interpleader did not end this litigation as to all claims and parties. When the District Court entered that order, it still had to address the arbitration dispute between CPR and Devon Park. Thus, the interpleader order was not then a final, appealable order. Cf. Gaines v. Sunray Oil Co., 539 F.2d 1136, 1140 (8th Cir. 1976) (holding that an order dismissing certain interpleader defendants from the action was not a final, appealable order because it "did not dispose of the rights and liabilities of all of the parties to this litigation"); CBS Steel & Forge Co. v. Shultz, 191 F.2d 683, 683 (9th Cir. 1951) (per curiam) (holding that an order dismissing a third-party complaint "was not a final decision, within the meaning of 28 U.S.C.[] § 1291, and was not appealable").

CPR wrongly contends that an order striking an interpleader complaint is equivalent to an immediately appealable order denying intervention under Rule 24 of the Federal Rules of Civil Procedure and so Deutsche Bank should have filed its appeal within thirty days of that order. See United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1179 (3d Cir. 1994). Rule 22 and Rule 24 serve different purposes. On one hand, Rule 22 interpleader allows a person or entity in possession of disputed property in which it has no interest to

8

place the property with a court and then permits parties with an interest in the property to ask a court to resolve who has the right to the property. On the other hand, Rule 24 allows nonparties to ensure their interests in the merits of the case are not "adversely affected by litigation conducted without their participation." Stallworth v. Monsanto Co., 558 F.2d 257, 265 (5th Cir. 1977); see also Buckner v. Schaefer, 14 F.3d 593, *1 (4th Cir. 1993) (Table) (per curiam) (noting that an important purpose of Rule 24 is the "protection of nonparties from adverse judgments entered in their absence"). When a nonparty is denied intervention, it loses its ability to protect its interest in the merits of the litigation, and that ability can only be restored by a successful, immediate appeal. Here, the arbitration focused on whether Devon Park wrongly withheld the Proceeds from a limited partner under the terms of the LP Agreement. Deutsche Bank was not a party to that agreement and thus any ruling would not have resulted in an "adverse judgment" against it. While the award may have an impact on Deutsche Bank's collection efforts, that is not equivalent to an adverse judgment. Thus, the purpose of Rule 24 and the reasons why an order denying intervention is immediately appealable are not implicated.

Therefore, we will deny CPR's motion to dismiss Deutsche Bank's appeal of the interpleader order based on purported untimeliness.

B[4]

---

[4] "The District Court's interpretation of the Federal Rules of Civil Procedure is a legal issue that we review de novo." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 264 (3d Cir. 2010) (alteration omitted).

9

The District Court properly struck Devon Park's Rule 22 interpleader complaint. To reach this conclusion, we examine the relationship between the Federal Rules of Civil Procedure and the FAA.

The Federal Rules of Civil Procedure apply to proceedings "relating to arbitration" under the FAA, "except as [the FAA] provide[s] other procedures." Fed. R. Civ. P. 81(a)(6)(B). One such procedure is set forth in 9 U.S.C. § 6, which states that "[a]ny application to the court [under the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." Therefore, a petition to confirm an arbitration award under the FAA is "a motion, not a pleading." IFC Interconsult, AG v. Safeguard Int'l Partners, LLC., 438 F.3d 298, 308 (3d Cir. 2006). The Federal Rules of Civil Procedure separate pleadings from motions. Pleadings provide notice to an adverse party that it has a claim or defense and is seeking court intervention. Rule 7 sets forth various pleadings, including a third-party complaint, see Fed. R. Civ. P. 7(a), and Rule 13 further provides that crossclaims and counterclaims must proceed via pleadings, see Fed. R. Civ. P. 13(b), (g). Motions, on the other hand, ask a court to take an action and seek "a court order." Fed. R. Civ. P. 7(b). Mindful of the distinction between pleadings and motions, we have held that parts of the Federal Rules of Civil Procedure that apply to pleadings do not apply to cases commenced by way of a motion to confirm or vacate an arbitration award pursuant to the FAA. See IFC Interconsult, 438 F.3d at 309 (holding that Rule 12(a)(4)(A), which then sets forth the timing for a responsive

10

pleading, is not applicable to FAA motions because such motions are not pleadings).[5]

---

[5] Our sister circuit courts have also held that other Federal Rules of Civil Procedure do not apply in proceedings to confirm or vacate an arbitration award. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107-08 (2d Cir. 2006) (holding that Rule 55, governing default judgment, "does not operate well in the context of a motion to confirm or vacate an arbitration award" because such motions are "motions in an ongoing proceeding rather than a complaint initiating a plenary action"); Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc., 23 F.3d 41, 46 (2d Cir. 1994) (same, regarding Rule 12(b)'s pleading requirements because the petitioner "appropriately sought relief in the form of a motion"); Health Servs. Mgmt. Corp. v. Hughes, 975 F.2d 1253, 1257-58 (7th Cir. 1992) (same, regarding Rule 16's scheduling and briefing requirements because 9 U.S.C. § 6 "preempts" the Federal Rules of Civil Procedure and provides that a petition to vacate "is to be treated procedurally in the manner of a motion"); O.R. Sec., Inc. v. Pro. Plan. Assocs., Inc., 857 F.2d 742, 748 (11th Cir. 1988) (same, regarding Rule 8's notice pleading requirements); see also Chelmowski v. AT&T Mobility, LLC, 615 F. App'x 380, 381 (7th Cir. 2015) (non-precedential) (holding that Rule 15(a)(1)(B), governing amendments to pleadings, "applies to pleadings, not to motions, and so is inapplicable in proceedings to vacate an arbitration award"); cf. ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 116 (2d Cir. 2012) ("We conclude that [the petitioner] could not [voluntarily] dismiss its petition to compel arbitration pursuant to Rule 41(a)(1)(A)(i) because that provision does not apply to petitions to compel under 9 U.S.C. § 4 in the circumstances here.").

Because Rule 22 interpleader proceeds via pleading, it is not a motion and is thus not permitted under the FAA. Rule 22 allows a plaintiff with "claims" that potentially expose it "to double or multiple liability" to initiate an interpleader action. Fed. R. Civ. P. 22(a). A "defendant exposed to similar liability may [also] seek interpleader through a crossclaim or counterclaim." Fed. R. Civ. P. 22(a)(2). Devon Park is the respondent in this case, and its Rule 22 interpleader complaint attempted to assert a counterclaim against CPR and a third-party complaint against Deutsche Bank. **Supp. App. 108.** In doing so, Devon Park proceeded via pleading rather than motion. However, because this action is one to confirm an arbitration award, it is governed by the FAA, which, as explained above, provides for motion practice rather than pleading practice. See 9 U.S.C. § 6. Since Devon Park's effort to invoke Rule 22 conflicts with the FAA's motion approach, Devon Park is not permitted to initiate an interpleader action in this FAA confirmation proceeding.[6] See Fed. R. Civ. P. 81(a)(6)(B).

---

[6] Deutsche Bank and Devon Park cite cases that they argue allowed interpleader claims to proceed concurrently with motions to confirm or vacate an arbitration award. **See Deutsche Br. at 15; Devon Park Br. at 38-39.** At oral argument, Devon Park focused specifically on United States ex rel. Milestone Tarant, LLC v. Federal Insurance Co., 815 F. Supp. 2d 41 (D.D.C. 2011). Tarant is distinguishable, however, because unlike the present action that was initiated by a motion pursuant to the FAA, the Tarant action was initiated via complaint. Id. at 42-43; see also No. 1:08-CV-02186, ECF No. 1 (complaint). Thus, the FAA and its distinction between motion and pleading practice were not implicated in Tarant. The other cases relied on by Deutsche

This conclusion comports with the fact that petitions to confirm or vacate arbitration awards are "summary proceeding[s]" that "do[] not [require] the district court to carry on a formal judicial proceeding," Teamsters Loc. 177 v. United Parcel Serv., 966 F.3d 245, 255 (3d Cir. 2020), and furthers the FAA's "national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway," Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 588 (2008); see also Booth v. Hume Pub., Inc., 902 F.2d 925, 933 (11th Cir. 1990) ("To allow a respondent to assert counterclaims that are beyond the scope of the defenses enumerated in the [FAA] would change the nature of the confirmation proceedings and would defeat the purpose of the [FAA]."); Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987) ("Actions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated.").

The District Court therefore correctly struck the interpleader application as a procedurally improper response to CPR's petition to confirm the arbitration award.[7]

Bank and Devon Park are similarly inapposite. See, e.g., Lynch v. Whitney, 419 F. App'x 826 (10th Cir. 2011) (non-precedential); Tittle v. Enron Corp., 463 F.3d 410 (5th Cir. 2006); Caro v. Fid. Brokerage Servs., LLC, No. 3:12-CV-01066, 2014 WL 3907920 (D. Conn. Aug. 11, 2014); Sullivan v. Lumber Liquidators, Inc., No. 2:13-CV-00070, 2013 WL 4049102 (D. Nev. Aug. 9, 2013); Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd., 658 F. Supp. 1205 (S.D.N.Y. 1987).

[7] Contrary to Devon Park's assertion, **Devon Park Br. at 40-41,** the District Court resolved Devon Park's declaratory judgment request set forth in the second count of its

III[8]

A

We next address whether the District Court erred in granting the petition to confirm the arbitration award in favor of CPR.[9] We conclude it did not.

A district court may vacate an arbitration award on four "narrow grounds":

interpleader complaint**, Supp. App. 119,** when the Court struck Devon Park's "interpleader claims" and "all third-party claims and parties." App. 4. Moreover, as explained, Devon Park failed to present evidence supporting its entitlement to such relief when it declined to participate in the final arbitration hearing.

[8] Because of "the strong federal policy in favor of commercial arbitration, [district courts] begin with the presumption that the award is enforceable" and enforce the award "absent a reason to doubt the authority or integrity of the arbitral forum." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219 (3d Cir. 2012), as amended (Apr. 4, 2012), aff'd, 569 U.S. 564 (2013). "On appeal from a district court's ruling on a motion to confirm or vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error." Id.

[9] Both Devon Park and Deutsche Bank cross-petitioned to vacate the arbitration award. CPR moved to dismiss Deutsche Bank's petition for lack of standing. To understand Deutsche Bank's theory of standing, it is necessary to review its actions before the arbitrator. Deutsche Bank sought to intervene in the arbitration as part of its efforts

14

(1) where the award was procured by corruption, fraud, or undue means;

---

to collect its foreign judgment. It contended that the Proceeds belonged to the judgment debtor and, as the judgment creditor, it had a stake in the outcome of the arbitration. Deutsche Bank, however, was not a party to the arbitration agreement, and its efforts to intervene in the arbitration were denied. As a result, it was not a party to the arbitration itself and lacks statutory standing to challenge the award. See 9 U.S.C. §§ 10(a), 11 (allowing district courts to vacate or modify an arbitration award upon the application of "any party to the arbitration"); see also Katir v. Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994) (holding that an individual "lack[ed] standing to challenge [an arbitration award]" because "[she] was not a party to the arbitration"). Deutsche Bank did, however, attempt to participate in the arbitration and asks that we review the arbitrator's order denying its request to intervene. It asserts it has standing to do so primarily based on Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828 (3d Cir. 1995). Caplan, however, dealt with a situation where an entity who was not a party to a district court proceeding attempted to file an appeal. Id. at 836.

Even assuming Caplan is applicable here and provides Deutsche Bank standing, Deutsche Bank still failed to present its arguments challenging the arbitrator's order to the District Court. It has therefore forfeited its challenge to the arbitrator's order. See DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal.").

15

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219 (3d Cir. 2012), as amended (Apr. 4, 2012) (quoting 9 U.S.C. § 10(a)), aff'd, 569 U.S. 564 (2013). Devon Park claims that the award should be vacated based upon § 10(a)(3) for the arbitrator's refusal to postpone the hearing and refusal to consider evidence and upon § 10(a)(4) for exceeding his powers. Neither provision provides a basis for relief.

B

Under § 10(a)(3), a court may vacate an arbitration award where the arbitrator engages in "misconduct" in refusing

to adjourn the hearing or hear relevant evidence or engaging in "any other misbehavior" that prejudices a party. 9 U.S.C. § 10(a)(3). "Misconduct" is conduct that "so affects the rights of a party that it may be said that he was deprived of a fair hearing." Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968); see also Apex Fountain Sales, Inc. v. Kleinfeld, 818 F.2d 1089, 1094 (3d Cir. 1987) ("Under Federal law, misconduct apart from corruption, fraud, or partiality in the arbitrators justifies reversal only if it so prejudices the rights of a party that it denies the party a fundamentally fair hearing."). A "fair hearing" is one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator. Newark Stereotypers' Union, 397 F.2d at 600; see also Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1013 (10th Cir. 1994) (collecting cases holding "that a fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before [unbiased] decision makers").

The arbitrator provided the parties an opportunity to have a fair hearing and was prepared to hear relevant evidence. See Newark Stereotypers' Union, 397 F.2d at 599 (stating that misconduct occurs when the conduct "so affects the rights of a party that it may be said that he was deprived of a fair hearing"). CPR and Devon Park were provided with notice of the claims**, App. 527, 541**, were given an opportunity to obtain discovery from each other as well as from Deutsche Bank, SHI, VBI, Vik, Vik Sr., and other related entities**, App. 527, 529**, including discovery about the validity of the Assignment Agreement, and had the chance to present their evidence and arguments to an unbiased arbitrator. Devon Park, however, declined to gather certain evidence and abandoned its right to

17

present evidence, defend itself, and participate in the hearing the arbitrator convened. **App. 529.**

The arbitrator's refusal to postpone the hearing also did not constitute misconduct because the arbitrator had a "reasonable basis" to deny the requested stay. Schmidt v. Finberg, 942 F.2d 1571, 1574 (11th Cir. 1991); see also Laws v. Morgan Stanley Dean Witter, 452 F.3d 398, 400 (5th Cir. 2006); Floyd Cnty. Bd. of Educ. v. EUA Cogenex Corp., 198 F.3d 245 (6th Cir. 1999) (Table); DVC-JPW Invs. v. Gershman, 5 F.3d 1172, 1174 (8th Cir. 1993). Devon Park moved to stay the arbitration**, App. 528,** after CPR and Devon Park had (1) agreed that their claims were arbitrable, **App. 541,** (2) served and responded to pleadings, **App. 526-27,** (3) engaged in months of discovery, **App. 527,** and (4) received a final hearing date**, App. 527**. Thus, the arbitrator gave the parties months to prepare for the arbitration and had an interest in moving the case to its conclusion. Devon Park also did not show "sufficient cause," 9 U.S.C. § 10(a)(3), to postpone the hearing. Simply because other fora were being asked to decide whether certain entities were responsible for satisfying Deutsche Bank's judgment did not mean that the contractual issues concerning the LP and Assignment Agreements became moot. Finally, Devon Park was not prejudiced by the absence of the stay. Devon Park could have sought, and in fact received, protection from competing orders when the arbitrator sua sponte suspended Devon Park's obligation to pay CPR if payment conflicted with any order in the Delaware Action. **App. 536.**

C

18

The District Court also correctly found that the arbitrator did not exceed his powers in finding in favor of CPR and therefore did not violate § 10(a)(4). "An arbitrator oversteps these limits . . . when he[,] [for example,] grants relief in a form that cannot be rationally derived from the parties' agreement and submissions[] or issues an award that is so completely irrational that it lacks support altogether." Sutter, 675 F.3d at 219-20. The award is supported by the evidence and "rationally derived from the parties' agreement." Id. (citation omitted). The evidence confirms the arbitrator's finding that there was a valid contract between Devon Park and CPR. **App. 532.** The Assignment Agreement showed that SHI assigned the Devon Park Interest to ULM, and the record reflects that Devon Park consented to this assignment. **App. 236, 248, 532.** Consistent with the parties' stipulation, the arbitrator then determined that ULM and CPR were the same entity. **App. 532, 284.** Since SHI assigned its interest to ULM, and ULM and CPR are the same entity, the arbitrator correctly found that CPR was a party to the LP Agreement. **App. 532.** Devon Park contends that the arbitrator failed to address whether CPR procured the Assignment Agreement by fraud, but Devon Park failed to appear at the final hearing and make its argument about this subject. Thus, it cannot now claim that the arbitrator acted irrationally on a subject Devon Park failed to present at the hearing.

Furthermore, the arbitrator's interpretation of the LP Agreement is supported by its terms. Section 5.2(a) of the LP Agreement required Devon Park to pay distributions to limited partners on a pro rata basis. **App. 178, 532.** The record shows that Devon Park paid its first distribution to CPR in March 2015 but then failed to make other distributions. **App. 532-34; App. 134 ¶ 23; App. 137 ¶ 46.** Accordingly, the arbitrator

19

appropriately found that Devon Park violated the LP Agreement and that, under the LP Agreement, CPR was entitled to the withheld distributions. **App. 536.**

IV

The arbitrator also correctly awarded prejudgment interest. The FAA provides three grounds for modifying or correcting an arbitration award, namely where (a) there has been a "material miscalculation" or mistake in identifying a party or property, (b) an award was based upon matters not presented to the arbitrator, or (c) the award "is imperfect" in its form that does not affect the merits.[10] 9 U.S.C. § 11(a)-(c). If

---

[10] 9 U.S.C. § 11 provides:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration--
>
> > (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

one of these events has occurred, then the court "may modify and correct the award, so as to effect the intent thereof and promote justice." Id.

Devon Park argues only that the prejudgment interest award should be eliminated to promote justice between the parties. **Devon Park Br. at 30 (quoting 9 U.S.C. § 11).** Promoting justice, standing alone, is not one of the enumerated grounds for modifying or correcting an arbitration award. See 9 U.S.C. § 11(a)-(c). Rather, the structure of § 11 shows that a district court must first conclude that at least one of the grounds for modification exists and, if so, then the court may modify the award "to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11. In other words, the enumerated subsections set forth the conditions that must exist

> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

21

before the court may even consider § 11's final sentence, which tells the court that any resulting order must effectuate the intent of the award and promote justice. Thus, as the District Court succinctly explained, "[j]ustice only comes into the equation after the district court determines that one of the three grounds for modification stated in § 11 applies."[11] CPR, 463 F. Supp. 3d at 537-38. Thus, Devon Park's assertion that the promotion of justice alone stands as an independent basis to modify an award is wrong.

Devon Park also incorrectly asserts that a prejudgment interest award is limited to simple interest under 6 Del. C. § 2301(a). Even assuming a mistake of law falls within one of the enumerated § 11 grounds to modify an arbitration award, there was no mistake here. Delaware courts have interpreted § 2301(a) to give courts the discretion to award compound interest. See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 817 A.2d 160, 173 (Del. 2002); Edgewater Growth Cap. Partners LP v. H.I.G. Cap., Inc., 68 A.3d 197, 238

---

[11] Several of our sister circuit courts have endorsed this reading of 9 U.S.C. § 11. See UBS Fin. Servs., Inc. v. Padussis, 842 F.3d 336, 342 (4th Cir. 2016); UHC Mgmt. Co. v. Computer Scis. Corp., 148 F.3d 992, 998 (8th Cir. 1998); Corey v. New York Stock Exch., 691 F.2d 1205, 1212 (6th Cir. 1982); see also Barranco v. 3D Sys. Corp., 734 F. App'x 885, 887 (4th Cir. 2018) (non-precedential) (stating that "[w]e may modify an arbitration award in order to effect the intent of the award and 'promote justice between the parties' when there is 'an evident material miscalculation of figures,'" (citation omitted)).

(Del. Ch. 2013). Thus, we will not disturb the arbitrator's award of prejudgment interest, compounded quarterly.[12]

V

For the foregoing reasons, we will deny CPR's motion to dismiss Deutsche Bank's appeal and affirm the District Court's orders striking the interpleader motion and confirming the arbitration award.

---

[12] Because Devon Park's arguments for vacating or modifying the arbitration award clearly fail on their merits, we do not rely on whether Devon Park waived its confirmation defenses by prematurely quitting the arbitration. However, we firmly admonish Devon Park for its choice to do so. Failure to attend an arbitration may result in waiver. See Int'l Bhd. of Elec. Workers, Loc. Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101 (8th Cir. 2004) (where a "particular issue is arbitrable, . . . a party cannot refuse to participate in arbitration or fail in arbitration to raise a particular argument concerning the merits of the grievance and later seek judicial resolution of that same issue"); see also Dean v. Sullivan, 118 F.3d 1170, 1172 (7th Cir. 1997) ("A disputant cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court." (quotation marks omitted)); Teamsters Loc. Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42-43 (3d Cir. 1985) ("[A] party may waive its right to raise on appeal an objection to the decision of an arbitrator when the party failed to address the objection before the arbitrator in the first instance.").